IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |
|---|---|
| H.K., a minor child, by and through her mother and legal guardian, RUTH KITT, | ) ) ) ) |
|  | ) COMPLAINT |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
|  | ) FILE NO. __2:17-cv-00220__-RWS |
| FRANK BERRY, in his official capacity as Commissioner of THE DEPARTMENT OF COMMUNITY HEALTH, | ) ) ) |
|  | ) |
| Defendant. | ) |
|  | ) ) |

**VERIFIED COMPLAINT FOR
INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff H.K., a minor child, by and through her mother and legal guardian, Ruth Kitt, brings this action pursuant to 42 U.S.C. §1983 for injunctive and declaratory relief against Defendant Frank Berry, in his official capacity as the Commissioner of Georgia's Department of Community Health, to redress Defendant's violations of the Plaintiff's rights under the Medicaid Act, 42 U.S.C. §1396 *et seq* and the U.S. Constitution.

**NATURE OF PROCEEDINGS**

1. H.K. is a fourteen-year-old young woman who experienced a catastrophic brain injury at birth. The injury to her brain resulted in many serious, chronic conditions, including cerebral palsy, quadriplegia, seizure disorder, scoliosis with curvatures, and a significant intellectual disability. H.K. cannot speak or express her needs, and requires constant supervision and assistance with all activities of daily life. H.K.'s multiple and complex conditions require constant monitoring, care and treatment by a skilled nurse.

2. H.K. is a Georgia Medicaid recipient under the age of 21.

3. In a letter dated August 24, 2017, H.K.'s pediatrician, Dr. Greg R. Cabrera, prescribed eighteen (18) hours per day six (6) days per week and twelve (12) hours per day one (1) day per week of skilled nursing services as medically necessary to correct or ameliorate H.K.'s conditions.

4. Advance Care Pediatrics ("ACP"), H.K.'s skilled nursing provider, submitted Dr. Cabrera's prescription for skilled nursing to the Georgia Pediatric Program ("GAPP") on H.K.'s behalf.

5. GAPP is a program operated by the Georgia Department of Community Health ("DCH"). GAPP is the service delivery model developed by DCH to provide in-home skilled nursing care to medically complex children with

multiple system diagnoses.

6.      DCH is the single state agency responsible for administering the Georgia Medicaid Program. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10; O.C.G.A. § 49–4–142.  Defendant Berry is the Commissioner of DCH.  DCH has delegated to a contractor, the Georgia Medical Care Foundation, Inc. ("GMCF"), the task of reviewing and deciding whether to approve or deny all requests for skilled nursing under GAPP.

7.      By letter dated October 4, 2017, addressed to ACP, GMCF approved H.K. for only **2 hours per week** of skilled nursing through GAPP.  The letter to ACP did not state the factual or legal reasons for the decision or inform of the right to appeal or how to appeal the decision.  H.K. did not receive a copy of this letter from DCH or GMCF.

8.      In a letter dated October 16, 2017, H.K.'s orthopedic surgeon, Dr. Michael L. Schmitz, notified GMCF of H.K.'s upcoming surgery on October 19, 2017, and requested she receive in-home skilled nursing for eighteen (18) hours per day six (6) day per week and twelve (12) hours per day one (1) day per week following her surgery.

9.      H.K. had surgery on October 19, 2017, at Children's Healthcare of Atlanta at Scottish Rite Hospital.  H.K. was discharged from the hospital to her

home on October 22, 2017.

10.     On October 23, 2017, Ruth Kitt received a letter from GMCF dated October 18, 2017 entitled "NOTICE OF *INITIAL* DETERMINATION OF DENIAL, TERMINATION, REDUCTION IN SERVICES OR DENIAL OF ADDITIONAL SERVICES FROM THE GEORGIA PEDIATRIC PROGRAM." ("GMCF Notice Letter") The letter notified Ms. Kitt that the determination regarding H.K.'s request for skilled nursing services was made "[i]n accordance with the Code of Federal Regulations, 42 CFR §409.31-409.34, 440.10, 440.230 and O.C.G.A. §49-4-169.1…" The letter then informed Ms. Kitt "[t]he request for 120 hours/week has been denied.  Your child's approved hours are 2 hour/week x 3 months."

11.     The GMCF Notice Letter provided the following reasons for the decision:

- Your child requires G-tube/oral medications; all of which are not so inherently complex to require a professional licensed person on a daily basis.
- There is no evidence from the documentation submitted that the requested hours are medically necessary to correct or ameliorate the child's medical condition (See 42 USCS §1382(h)(b), O.C.G.A. §49-4-169.1 and GAPP Manual §702.1.A)
- Skilled nursing hours cannot be granted on projected potential problems.  It is to provide for the current skilled need of the child.
- Skilled nursing hours are approved based on the medically necessary needs of the child.

- Feeding tubes are not so inherently complex to require a professional licensed person on a daily basis.
- Non-covered GAPP services include "Services for back up support or respite purposes for the primary or secondary caregiver." (See GAPP Manual §906 G.)
- Therapy services such as Physical Therapy, Occupational Therapy and Speech Therapy may be obtained through Medicaid's Children's Intervention Services Program for eligible members under the age of twenty-one (21) with physical disabilities or a developmental delay, which have been prescribed for rehabilitative or restorative intervention therapy services by a physician…
- All other sources of reimbursement must be exhausted prior to seeking reimbursement from the Department of Community Health. Medicaid is the payer of last resort. (Please see Section 1001.3 in the GAPP Manual).
- Your child may be eligible for medically necessary Personal Support Services (PSS) through the GAPP program, which provides for personal care tasks such as assistance with eating, bathing, dressing, personal hygiene, preparation of meals, light housekeeping tasks and other activities of daily living…

12. The GMCF Notice Letter fails to provide sufficient notice to H.K. The letter fails to provide the specific reasons why the skilled nursing hours ordered by H.K.'s treating physicians are not medically necessary. Instead, the letter provides citations to irrelevant statutes, asserts misleading or false claims, and simply restates GAPP policy.

13. In making his determination of skilled nursing hours for H.K., Defendant did not consider the prescription of one hundred twenty (120) hours per week of medically necessary skilled nursing by H.K.'s treating physicians and did

not consider Ms. Kitt's capacity to provide one hundred and sixty-six (166) hours per week of skilled care to her daughter.

14.     Defendant's failure to provide skilled nursing services as prescribed by H.K.'s treating physicians places H.K. at significant risk of harm, particularly after surgery and a three (3) day hospital stay.

15.     The Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provisions of the Medicaid Act require DCH to provide Medicaid-eligible children and youth under 21 years of age such as H.K. with all necessary health care and other services described in 42 U.S.C. §1396d(a) necessary to "correct or ameliorate" their conditions. 42 U.S.C. § 1396d(r)(5). These services include private-duty nursing and case management services. *See* 42 U.S.C. §1396d(a)(8)&(19); *see also Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1224 (11th Cir. 2011).

16.     The EPSDT provisions require Defendant to provide information about the services described in 42 U.S.C. §1396d(a) available under the EPSDT program and where and how to obtain those services. *See* 42 U.S.C. §1396a(a)(43)(A); 42 C.F.R. §441.56(a)(2)(ii).

17.     H.K., as a Georgia Medicaid recipient under the age of 21, is entitled to the prompt provision of EPSDT services, specifically medically necessary

private duty nursing services in the form of in-home skilled nursing services and case management services as prescribed by her treating physicians.

18.     The Medicaid Act and the Fourteenth Amendment of the U.S. Constitution entitle H.K. to adequate notice of Defendant's decisions regarding her Medicaid benefits. 42.U.S.C. §1396a(a)(3); 42 C.F.R. §§431.206, 431.210; *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970).

19.     Defendant has failed to meet his obligations to H.K. under the Medicaid Act in the following ways:

- Defendant has applied policies or practices not based on medical necessity that serve to limit or reduce the amount of skilled nursing care approved for H.K.;

- Defendant has failed to promptly provide medically necessary skilled nursing services to H.K.;

- Defendant has failed to inform H.K. of the availability of case management services and where and how to access those services;

- Defendant has failed to provide access to medically necessary case management services to H.K.; and,

- Defendant has failed to provide sufficient notice to H.K. of his decision regarding her request for medically necessary skilled nursing

7

services.

20. Plaintiff seeks declaratory and injunctive relief to enjoin Defendant from continued violations of the Medicaid Act and the U.S. Constitution by continuing to deny Plaintiff medically necessary services under EPSDT, by failing to inform Plaintiff of EPSDT services, and by failing to provide sufficient notice of his decision.

## JURISDICTION AND VENUE

21. This civil action is authorized by 42 U.S.C. § 1983 to redress the deprivation under color of law of rights guaranteed by the Medicaid Act and the U.S. Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

22. This Court has authority to grant Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

23. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

24. Plaintiff H.K. is fourteen (14) years old and is a Medicaid beneficiary eligible to receive services under EPSDT. H.K. resides in Gainesville, Georgia

8

with her mother. H.K. brings this action by and through Ruth Kitt, her mother and legal guardian.

25.    Defendant Frank Berry is the Commissioner of DCH, the single state agency responsible for administering the Georgia Medicaid Program. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10; O.C.G.A. § 49–4–142.  As Commissioner of DCH, Defendant Berry is responsible for ensuring that the operation of the Georgia Medicaid Program fully complies with the Medicaid Act and its implementing regulations.  Defendant Berry is sued solely in his official capacity. (Throughout this complaint, Defendant Berry and DCH will sometimes be collectively referred to as "DCH.")

26.    At all times relevant to this action, Defendant has acted under color of state law.

27.     The State of Georgia participates in the Medicaid program, a voluntary federal-state partnership for payment of certain healthcare for persons eligible to receive Medicaid.

### H.K.

28.    H.K. experienced hypoxic-ischemic encephalopathy, a brain injury caused by oxygen deprivation to the brain.  As a result, she has spastic quadriplegia, cerebral palsy, a significant intellectual disability, epilepsy, gastro-

esophageal reflux disease with esophagitis, torticollis and dysphagia.

29.     H.K. requires continuous skilled care 24 hours per day, 7 days per week due to the complexity of her conditions.  She requires constant monitoring and skilled nursing assessment of her condition to timely identify problems and provide appropriate skilled interventions as needed.  She is at high risk for falls, skin breakdown, aspiration, seizures, insufficient nutrition and bowel impactions.  She requires ongoing skilled nursing assessments and interventions related to her seizure activity, respiratory status, risk of aspiration, skin breakdown and bowel and bladder management.

30.     H.K. has a seizure disorder that requires constant monitoring and close observation by a skilled caregiver for seizure activity.  H.K.'s seizures are unpredictable and can happen at any time of the day.  H.K. receives a regular regimen of medications to reduce her seizures.  If H.K.'s seizures become prolonged or if she has 3 or more in a row, she requires immediate intervention with an additional medication that is prescribes "as needed."  She requires an attentive and skilled caregiver who can identify when she is having a seizure and can intervene appropriately.

31.     H.K. produces a lot of secretions, which puts her at risk of aspiration, and must be closely monitored.  H.K.'s secretions must be regularly suctioned.

Her head is turned to the left side and her secretions regularly keep her left shoulder damp. Her shoulder area requires regular cleaning and attention to prevent skin breakdown and infection. H.K. developed a yeast infection on the skin of her left shoulder due to the secretions that had to be treated with medications.

32.    H.K. is fed and receives all medications via a gastrostomy tube ("G-tube"). H.K. receives medication via G-tube two to three times daily and more often when ill. H.K. must be monitored when she receives medications to ensure she tolerates them well. Administration of medications is a skilled nursing task.

33.    H.K. must be monitored during feedings via G-tube for aspiration and vomiting. Feeding through a G-tube is a skilled nursing task.

34.    The G-tube site must also be constantly inspected for signs and symptoms of irritation or infection.

35.    H.K. is also prescribed oxygen. She occasionally requires supplemental oxygen via nasal cannula when her oxygen saturation levels drop below 92%. Oxygen is classified as a medication in Georgia. The administration of oxygen is a skilled nursing task.

36.    H.K. currently has prescriptions for multiple medications for her seizures, spasticity, pain, vomiting and diarrhea, constipation, allergies and for

11

irritation or rash at her G-tube site.  Many of these medications are administered on an "as needed" basis, which requires nursing judgment, as do the effects of possible combinations of the medications.

37.     H.K. is incontinent of bladder and bowel.  H.K. is at risk of constipation and possible impaction.  Her bowel movements must be monitored and appropriate interventions performed as needed.

38.     H.K. cannot move. She must be repositioned frequently to ensure an open airway and to prevent the development of decubitus ulcers (pressure ulcers) on her skin. H.K. is at high risk of skin breakdown due to her incontinence and immobility. This repositioning must be performed both during the day and at night.

39.     Because of the underlying complexity of H.K.'s many conditions, tasks that might normally be considered unskilled care such as repositioning and cleaning require a skilled nurse to perform to monitor for seizures, skin breakdown, aspiration and an open airway.

40.     H.K. is unable to speak and cannot communicate her wants and needs. She requires a skilled caregiver that can anticipate her daily needs and provide appropriate and timely care as needs arise.

41.     H.K.'s multiple and complex conditions require constant monitoring, care and treatment by a knowledgeable and skilled caregiver.  H.K. requires

12

ongoing and frequent skilled nursing assessments to determine when and what skilled interventions are necessary to maintain or improve the status of her health and conditions.  If these interventions are delayed or not performed, it can be expected that H.K.'s chronic conditions will deteriorate, resulting in further loss of function, imminent risk to her health, and even risk of death.

42.     H.K.'s treating physicians, Dr. Greg R. Cabrera and Dr. Michael L. Schmitz, have both prescribed H.K. to receive eighteen (18) hours per day for six (6) days per week and twelve (12) hours per day one (1) day per week of in-home skilled nursing care.  Based upon their experience as H.K.'s treating physicians, Dr. Cabrera and Dr. Schmitz believe H.K. requires these hours per day of skilled nursing care to maintain her health and ameliorate her complex conditions.

43.     H.K.'s mother, Ruth Kitt, can perform many of the same tasks that the nurses perform, and she provides care to H.K. when there is no nurse in the house. But Ms. Kitt is not a trained nurse, and she cannot perform skilled nursing assessments or exercise nursing judgment.

44.     Ms. Kitt is employed full-time and works from home approximately 40+ hours per week.  She is raising H.K. as a single parent.

45.     The two (2) hours per week of skilled nursing care approved by GMCF for H.K. are shockingly inadequate to meet H.K.'s medical needs, as

13

reflected in the opinions of her two treating physicians who have prescribed one hundred twenty (120) hours per week of skilled nursing.

## THE GEORGIA PEDIATRIC PROGRAM (GAPP)

46.    DCH created the GAPP program as its service-delivery model for providing nursing care in the home to "medically fragile" children with multiple systems diagnoses.

47.    The GAPP program provides in-home skilled nursing and personal care support services.

48.    Once found eligible, children who participate in the program must be recertified every three to six months. During recertification, the number of nursing hours received by the child is reevaluated and subject to adjustment.

49.    DCH has delegated to GMCF, the task of reviewing and deciding whether to approve or deny all requests for nursing services that are made by treating physicians on behalf of Medicaid-eligible children seeking nursing services through GAPP.

50.    Among the decisions delegated to GMCF is whether to grant the number of weekly skilled nursing hours requested on behalf of Medicaid-eligible children, or whether to provide fewer hours than the treating physician believes to be necessary.

14

51.   GMCF, in making decisions to grant or deny services through GAPP, acts on behalf of DCH.

52.   GMCF applies the policies and procedures of the GAPP program when it denies requests for prior approval for nursing services – either by denying approval for any services or by approving less of the service than was requested – regardless of what the treating physician has determined is medically necessary to correct or ameliorate the child's condition.

53.   The Medicaid Act requires DCH to provide skilled nursing sufficient in amount, duration and scope to achieve the purpose of EPSDT – to correct or ameliorate the child's conditions.

54.   Georgia law defines "medically necessary services" to mean "services or treatments that are prescribed by a physician or other licensed practitioner and which, pursuant to the EPSDT Program, diagnose or correct or ameliorate defects, physical and mental illnesses, and health conditions, whether or not such services are in the state plan." O.C.G.A. § 49-4-169.1(4)

55.   In Georgia, the phrase "correct or ameliorate" has been defined by state statute to mean to "improve or maintain a child's health in the best condition possible, compensate for a health problem, prevent it from worsening, prevent the development of additional health problems, or improve or maintain a child's

overall health, even if treatment or services will not cure the recipient's overall health." O.C.G.A. § 49-4-169.1(1).

56.     In determining the amount of skilled nursing hours provided to children who participate in the GAPP program, DCH and GMCF use criteria that are not based on medical necessity.

57.     Instead, DCH and GMCF use the following justifications to limit the amount of nursing hours provided:

- The purpose of the GAPP program is to teach parent/caregivers to perform skilled nursing tasks and then to wean the child from expensive skilled nursing care;

- The length of time the child has been in the program or the length of time since the last reduction in hours;

- The competency of the parents to perform skilled tasks without any consideration of limits on the parents' capacity because of employment, other children or adult dependents, or the need for sleep, rest and recreation;

- Claiming that skilled nursing tasks are unskilled;

- Claiming lack of evidence of medical necessity when presented with the child's medical records and treating physicians' prescriptions for skilled nursing care; and

- Claiming the nursing hours are for the convenience of the caregiver.

58.     The justifications and rationale employed by Defendant limit or ignore many of the healthcare needs of the child.  For those needs that are

16

recognized, they are trivialized as being either "not so inherently complex" or for the convenience of the parent/caregiver.

59.     It is GAPP policy and practice to use the same boilerplate reasons to deny or reduce skilled nursing services provided to H.K. and all children who participate in the GAPP program.

## MEDICAID FRAMEWORK & SERVICES

60.     In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.* ("the Medicaid Act"), establishing the Medicaid program, a voluntary, cooperative, federal-state program to provide necessary medical services to eligible beneficiaries.

61.     Although state participation in the Medicaid program is voluntary, once a state elects to participate, the state must comply with all federal requirements governing the program.

62.     Georgia elected to participate in the Medicaid program, obligating it to comply with all federal requirements governing the Medicaid program.

63.     The purpose of the Medicaid program is to enable each state "to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services and (2) rehabilitation and other

services to help such families and individuals attain or retain capability for independence or self-care . . . ." 42 U.S.C. § 1396-1.

64.    The Medicaid Act defines "medical assistance" as payment for the cost of care and services included in an enumerated list of twenty-eight (28) general health care ("medical assistance") categories.  42 U.S.C. § 1396d(a). Some of these categories must be included in the state plan (mandatory categories), while others may be included at the option of the state (optional categories).  42 U.S.C. §1396a(a)(10)(A).

65.    Under the provisions of the Medicaid Act, each participating state's Medicaid plan must provide the following mandatory categories of services: inpatient and outpatient hospital services; other laboratory and x-rays; early and periodic screening, diagnostic and treatment services ("EPSDT") for beneficiaries under age twenty-one; physician services; nurse-midwife services; and certified pediatric and nurse practitioner services.  42 U.S.C. §§ 1396a(a)(10)(A).

66.    The Medicaid Act requires states participating in Medicaid to provide certain services to Medicaid-eligible children under 21 years of age. The provisions of the Medicaid Act specific to beneficiaries under age 21 years are known as EPSDT and set forth at 42 U.S.C. §1396d(r).

67.    The EPSDT provisions of the Medicaid Act require that states provide

18

children "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [§ 1396d(a)] to **correct or ameliorate** defects and physical and mental illnesses and conditions discovered by the screening services, **whether or not such services are covered under the State plan.**"  42 U.S.C. § 1396d(r)(5) (emphasis added).

68.    42 U.S.C. §1396d(a) lists the twenty-eight (28) broad categories of healthcare services that are covered by the Medicaid Act.

69.    Private duty nursing services is one of the enumerated categories of service under subsection (a), *i.e.*, 42 U.S.C. §1396d(a)(8).

70.    Case management services is one of the enumerated categories of service under subsection (a), *i.e.*, 42 U.S.C. §1396d(a)(19).

71.    Georgia, as a participant in the Medicaid program, must provide all care, treatment and services covered by the categories of service in the Medicaid Act that are necessary to correct or ameliorate the conditions and illnesses of Medicaid eligible children under 21 years of age in Georgia under EPSDT.

72.    Under the Medicaid Act, DCH must provide information about the services available under the EPSDT program and where and how to obtain those services. 42 U.S.C. §1396a(a)(43)(A); 42 C.F.R. §441.56(a).

73.    Under the Medicaid Act, DCH must arrange for EPSDT treatment

services when the need for such services has been disclosed. 42 U.S.C. §1396a(a)(43)(C).

## EPSDT & MEDICAID WAIVER PROGRAMS

74. In addition to the services provided under their state Medicaid plans, states may seek approval from the U.S. Department of Health and Human Services to provide home and community-based services ("HCBS") to individuals who would otherwise require institutional care under special programs known as "HCBS Waiver programs."

75. The HCBS Waivers offer increased provision of home and community based services to Medicaid recipients who would otherwise qualify for admission to a facility such as a hospital, skilled nursing facility, or intermediate care facility for people with developmental disabilities. *See* 42 U.S.C. § 1396n(c)(1).

76. Georgia can offer a variety of services under an HCBS Waiver program, including standard healthcare services covered by 42 U.S.C. §1396d(a) and other services not traditionally covered by Medicaid such as respite or home modifications that can prevent institutionalization.

77. Georgia has a variety of HCBS Waivers, each of which provide a defined package of home and community based services. Each HCBS Waiver has

limits on the type and amount of services available for participants.

78.    "Because the HCBS waiver can provide services not otherwise covered under Medicaid, and can also be used to expand coverage to children with special health care needs, EPSDT and HCBS waivers can work well in tandem. However, a child's enrollment in an HCBS waiver **cannot** be used to deny, delay, or limit access to medically necessary services that are required to be available to all Medicaid-eligible children under federal EPSDT rules." U.S. Department of Health and Human Services, Dear State Medicaid Director, Olmstead Update No. 4, Att. 4-B (Jan. 10, 2001) at 10, *available at* https://downloads.cms.gov/cmsgov/archived-downloads/SMDL/.../smd011001a.pdf. (emphasis added)

79.    "Under EPSDT requirements, generally children under age 21 who are served under the Medicaid program should have access to a broad array of services. State Medicaid programs must make EPSDT services promptly available [for any individual who is under age 21 and who is eligible for Medicaid] whether or not that individual is receiving services under an approved HCBS waiver." *Id.*

80.    "In all instances, HCBS waivers **supplement but do not supplant** a State's obligation to provide EPSDT services. A child who is enrolled in an HCBS waiver also must be assured EPSDT screening and treatment services. The waiver

is used to provide services that are in addition to those available through EPSDT."
*Id*. at 11. (emphasis added)

81.    Because the Medicaid Act mandates that all Medicaid-eligible children receive all medically necessary services listed in 42 U.S.C. §1396d(a) regardless of whether such services are specifically included in the state Medicaid plan, HCBS Waivers **may not** provide for the coverage of services that could be furnished to children under EPSDT. *See* 42 U.S.C. §1396d(r)(5); Centers for Medicare and Medicaid Services, *Instructions, Technical Guide and Review Criteria for § 1915(c) Home and Community Based Waiver* 104 (January 2017), *available at* http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Waivers/Downloads/Technical-Guidance.pdf. (emphasis added)

82.    "States have an affirmative responsibility to ensure that all child waiver participants (including children who become eligible for Medicaid by virtue of their enrollment in a HCBS waiver) receive the medically necessary services that they require, including Medicaid coverable services available under EPSDT." *Id*. at 120

83.    H.K. was a previous participant in the GAPP program and received skilled nursing under the program.  She was subjected to GAPP policies and practices and her nursing hours were reduced.  Ruth Kitt was told H.K. could get

greater hours of skilled nursing through the Comprehensive Supports Waiver ("COMP Waiver"), a Medicaid Home and Community Based Services Waiver program ("HCBS Waiver") offered by Defendant.  In approximately 2015, H.K. was accepted into the COMP Waiver.

84.    Through the COMP Waiver, H.K. currently receives approximately 24 hours of skilled nursing services per week from ACP and case management services called support coordination from Creative Consulting Services.

85.    Defendant has permitted the skilled nursing and support coordination services provided to H.K. under the COMP Waiver to supplant his affirmative obligation to provide her skilled nursing and case management services under EPSDT.

86.    GAPP policy does not permit H.K. to use COMP Waiver nursing hours and GAPP nursing hours concurrently.  Section 704 of the GAPP Manual states, "Services from other programs may not be duplicative, i.e., GAPP members cannot receive skilled nursing services and/or personal care support through another Medicaid Program."

87.    Pursuant to the EPSDT mandate, CMS policy guidance and DCH GAPP policy, H.K.'s skilled nursing service may only be provided as EPSDT services through Georgia's state Medicaid plan.

88.    The October 4, 2017, Letter of Notification from GMCF to ACP stated, "GAPP PA to become active on the date of discharge from the Waiver program." This means the prior authorization ("PA") for the 2 hours per week of approved GAPP nursing hours will not become active until H.K. is discharged from the COMP Waiver.

89.    H.K. is not required to be discharged from the COMP Waiver in order to receive EPSDT services such as skilled nursing services.  H.K. has been determined to be eligible for the COMP Waiver, an HCBS Waiver.  As a Medicaid eligible person under the age of twenty-one (21), H.K. is entitled to receive EPSDT services and any HCBS Waiver services for which she qualifies not otherwise covered by the categories of services listed at 42 U.S.C. §1396d(a).  Examples of services provided by the COMP Waiver but not otherwise covered by the Medicaid Act are respite, home modifications, and supported employment.

## PRIVATE DUTY NURSING SERVICES

90.    As a state participating in the Medicaid program, Georgia must provide private duty nursing services to Medicaid-eligible children under 21 years of age when this service is necessary to correct or ameliorate a child's condition. 42 U.S.C. §§1396d(a)(8)&(r)(5).

91.    "Private duty nursing services" are defined in the Code of Federal

Regulations, 42 C.F.R. §440.80. In pertinent part, private duty nursing services are defined as nursing services for individuals "who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility." 42 C.F.R. §440.80. These services are provided by a registered nurse or a licensed practical nurse under the direction of a physician and may be provided in an individual's home. *Id.*

92.     The GAPP program service-delivery model is providing in-home skilled nursing care to eligible children.

93.     In Georgia, a child who is eligible to receive EPSDT services cannot receive the EPSDT private duty nursing benefit unless the child is enrolled in GAPP.

94.     GAPP is designed as a "teaching and weaning" program.  One of the primary goals of the GAPP program is the reduction of skilled nursing services provided to children through the program by teaching parents to perform and assume increasing amounts of skilled care for their children.

95.     Although DCH has revised the language in its GAPP Manual over the last several years to obscure the "teaching and weaning" purpose of the program, the GAPP policy of weaning skilled nursing care and offloading the responsibility to provide skilled care onto already overburdened caregivers remains in effect, as

reflected in these provisions in the current GAPP Manual:

**702.1**  **<u>Medicaid Eligible Members</u>**

. . .

Acceptance of members into the Georgia Pediatric Program (GAPP) must be based on all of the following criteria:

. . .

B.  . . . The primary caregiver must assist with the member's care in the home . . .

C.  The availability and ability of the caregiver(s) to actively participate in the care of the member. . . .

D.  The number of hours for which approval will be granted is based on . . . the documented training needs of the primary caregiver . . . .

E.  The expectation that the primary caregiver(s) will become competent to assume some responsibility for the care of the child.

**803. A.**  <u>GAPP Letter of Notification/Adverse Action</u>

. . .

(c)  One of the goals of the Georgia Pediatric Program is teach the parents and caregivers how to safely care for the member in the absence of a skilled nurse.

26

96.     The GAPP policy of weaning skilled nursing care and offloading the responsibility to provide skilled care onto parents is demonstrated by Defendant's policy and practice of reducing the amount of skilled nursing care provided to a child when the child's condition has not changed or improved.

97.     This GAPP policy of pushing increasing amounts of skilled care onto parents – irrespective of the needs of the child for skilled nursing care or the parents' competency or capacity to provide such care – violates the EPSDT mandate that children must be provided with all medically necessary services to correct or ameliorate their conditions and places Medicaid eligible children at risk of harm and poor healthcare outcomes.

98.     Through application of the policies and practices of the GAPP program, DCH is attempting to shirk its affirmative duty to provide H.K. with all care necessary to "correct or ameliorate" her complex conditions.

99.     H.K. requires the presence of a skilled caregiver twenty-four (24) hours per day.  GAPP's approval of only two (2) hours per week of skilled nursing per week ignores H.K.'s treating physicians' prescriptions of one hundred twenty (120) hours per week of skilled nursing, imposes one hundred sixty-six (166) hours per week of skilled care on H.K.'s mother, and places H.K. at risk of harm due to the deterioration of her health.

27

## CASE MANAGEMENT SERVICES

100. As a state participating in the Medicaid program, Georgia must provide case management services to Medicaid-eligible children under 21 years of age when the service is necessary to correct or ameliorate a child's condition. 42 U.S.C. §§1396d(a)(19)&(r)(5).

101. "Case management services" are defined in the Medicaid Act, 42 U.S.C. §1396n(g)(2), and the Code of Federal Regulations, 42 C.F.R. §440.169. In pertinent part, case management services include the following types of assistance: Comprehensive assessment and periodic reassessment of individual needs, to determine the need for any medical, educational, social, or other services; development (and periodic revision) of a specific care plan based on the information collected through the assessment; referral and related activities (such as scheduling appointments for the individual) to help the eligible individual obtain needed services; and monitoring and follow-up activities, including activities and contacts that are necessary to ensure that the care plan is effectively implemented and adequately addresses the needs of the individual. 42 C.F.R. §440.169(d).

102. Case management services are not available in Georgia as an EPSDT service for Medicaid-eligible children between the ages of three (3) and twenty-one (21).

103.   Case management services are available to Medicaid-eligible children under the age of three (3) through the Early Intervention Case Management Program, which is administered by the Georgia Department of Public Health through an agreement with DCH. *Part II Policies and Procedures for Early Intervention Case Management Program*, § 702, p. VII-1 (October 1,  2017), *available at*

https://www.mmis.georgia.gov/portal/Portals/0/StaticContent/Public/ALL/HAND BOOKS/FV%20April%202015%20Early%20Intervention%20Case%20Managem ent%2001-04-2015%20152115.pdf.

104.   Defendant provides case management services to Medicaid-eligible individuals who receive services through Georgia's various Medicaid HCBS Waiver programs. *See, e.g., Part II Policies and Procedures for Independent Care Waiver Services*, § 902.1; *Part II Policies and Procedures for Service Options Using Resources in Community Environments*, § 804, pp. 23-24; *Part III Policies and Procedures for COMP*, § 2901 (all manuals available at

https://www.mmis.georgia.gov/portal/PubAccess.Provider%20Information/Provide r%20Manuals/tabId/54/Default.aspx ).

105.   DCH fails to inform Medicaid-eligible children under 21 such as H.K. about the availability of case management services under EPSDT and about how to request or access case management services under EPSDT.

106.   DCH fails to make available to Medicaid-eligible children under 21 for whom case management services are necessary to correct or ameliorate their conditions a variety of providers qualified and willing to provide case management services under EPSDT.

107.   Plaintiff's treating physician has prescribed case management services as medically necessary to correct or ameliorate H.K.'s complex conditions.

108.   H.K. has no access to EPSDT case management services through Georgia's Medicaid program.

109.   Defendant has failed to inform H.K. of where and how to access EPSDT case management services.

110.   Defendant has failed to make EPSDT case management services readily available to H.K.

## DUE PROCESS REQUIREMENTS

111.   Beneficiaries of Medicaid must be afforded due process of law when Medicaid services are reduced, denied or terminated.

112.   Federal regulations require state Medicaid agencies to issue a written

notice to every beneficiary whenever the agency takes any action affecting an individual's claim for services. 42 C.F.R. §§ 431.206(b) & (c)(2).

113.  The notice must include (1) a statement of what action the state intends to take; (2) a clear statement of the specific reasons supporting the intended action; (3) the specific regulations that support, or the change in federal or state law that requires, the action; (4) an explanation of the individual's right to request an evidentiary hearing; and (5) an explanation of the circumstances under which Medicaid is continued if a hearing is requested. 42 C.F.R. § 431.210.

114.  The constitutional right to due process also imposes notice requirements. The Fourteenth Amendment of the U.S. Constitution prohibits Georgia from depriving a person of life, liberty, or property without due process of law. H.K. has a protectable "property interest" in her Medicaid benefits under the Fourteenth Amendment. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970) (explaining that when public welfare benefits are terminated, due process requires notice and an opportunity to be heard).

115.  As the U.S. Supreme Court has explained, due process "principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination." *Id.* In order to be effective, such notice must include both the legal and factual bases underlying the decision. *See id.* at 268 (noting that

31

"recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases").

116. The GMCF Notice Letter dated October 18, 2017, fails to inform H.K. of the specific factual and legal bases for the denial of medically necessary skilled nursing. Instead, the letter provides citations to irrelevant statutes and regulations, asserts misleading or false claims, and restates GAPP policy.

117. H.K.'s treating physicians have clearly and thoroughly explained in the letters they submitted to GMCF why the hours of skilled nursing they have requested for H.K. are medically necessary to ameliorate H.K.'s many conditions. The GMCF Notice Letter fails to provide specific facts related to H.K.'s conditions or care needs that justify the denial of the treating physicians' request. Instead, the letter contains empty boilerplate language and blanket statements that are not specific to H.K. and her care needs. For example, the letter makes the blanket assertion that there is "no evidence from the documentation submitted that the requested hours are medically necessary to correct or ameliorate the child's medical condition." In reference to H.K.'s use of a G-tube for medications and feeding, it makes the blanket assertion that G-tubes "are not so inherently complex to require a professional licensed person on a daily basis" without providing a

32

specific explanation why the skilled nursing task of administering feedings and medications via G-tube for H.K. doesn't require a licensed nurse. And it fails to state when a nurse is needed for H.K. related to her G-tube, if not daily.

118.    Moreover, the numerous errors contained in the GMCF Notice Letter further obfuscate the alleged justification for the denial of medically necessary services.  The letter cites as governing authority federal regulations regarding criteria for **facilities**.  42 C.F.R. §440.10 defines what inpatient hospital services are.  42 C.F.R. §§409.31-409.34 are requirements for Medicaid coverage for posthospital skilled nursing facility care.  These regulations are wholly irrelevant to the determination of the medical necessity of skilled nursing for H.K. under EPSDT.

119.    The letter also justifies the denial of medically necessary nursing hours in part by citing to 42 U.S.C. §1382(h)(b).  The citation 42 U.S.C. §1382h(b) is contained within a section of the Federal Code entitled, "Benefits for individuals who perform substantial gainful activity despite severe medical impairment."  This citation is not related in any way to nor supports the statement in the GMCF Notice Letter, "There is no evidence from the documentation submitted that the requested hours are medically necessary to correct or ameliorate the child's medical condition."

120. Finally, the GMCF Notice Letter makes blanket assertions of GAPP policy as reasons for the decision without explaining how those polices apply to H.K.'s request for skilled nursing. For example, it states "Skilled nursing hours cannot be granted for projected potential problems. It is to provide for the current skilled need of the child." The letter fails to identify any "projected potential problems" asserted by H.K.'s treating physicians or why those "problems" don't require skilled nursing care.

### COUNT ONE

121. The allegations of the numbered paragraphs above are incorporated herein by reference.

122. Under the EPSDT provisions of the Medicaid Act, 42 U.S.C. §1396d(r), Plaintiff has a right to receive Medicaid-funded services that her treating physicians have determined are medically necessary to correct or ameliorate her conditions.

123. Defendant's failure to approve H.K.'s treating physicians' prescriptions of eighteen (18) hours per day for six (6) days and twelve (12) hours per day for one (1) day of skilled nursing services following surgery places H.K. at serious risk of harm, including complications, hospitalization and death.

124. H.K. will suffer irreparable injury as a result of Defendant's reduction

34

of the number of skilled nursing services prescribed to H.K. by her treating physician as medically necessary to correct or ameliorate her conditions.

125.   The potential harm to Defendant for providing coverage for the skilled nursing hours as prescribed for H.K. is minimal.

126.   H.K. has a substantial likelihood of success on the merits of her claims based upon the Medicaid Act, 42 U.S.C. §§ 1396a, *et seq*.

127.   It is in the public interest that H.K. continue to receive medically necessary care at home and to avoid the increased risk of illness, infection, and other impairment of her health that is created by failing to approve the medical care she needs.

128.   This is a proper case for the entry, under Fed. R. Civ. P. 65, of a temporary restraining order and preliminary injunction to limit further and greater irreparable harm to H.K.

## COUNT TWO

129.   The allegations of the numbered paragraphs above are incorporated herein by reference.

130.   Defendant has, by the actions and inactions set forth above, violated the Medicaid Act, 42 U.S.C. §§ 1396, et seq., and its implementing regulations by:

   (a)   Denying Plaintiff H.K. medically necessary private duty

nursing and case management services to which she is entitled under EPSDT, in violation of 42 U.S.C. § 1396d(r)(5);

(b)    Operating and applying its Medicaid program in a way that denies and limits Plaintiff H.K.'s access to the EPSDT benefits to which she is entitled;

(c)    Failing to provide adequate notice of his decision to reduce or deny services in violation of the Medicaid Act.

## COUNT THREE

131.   The allegations of the numbered paragraphs above are incorporated herein by reference.

132.   Defendant has, by the actions and inactions set forth above, violated the Fourteenth Amendment to the U.S. Constitution by failing to provide adequate notice of his decision to reduce or deny Medicaid services.

## COUNT FOUR

133.   The allegations of the numbered paragraphs above are incorporated herein by reference.

134.   Plaintiff's right to receive the EPSDT benefits to which she is entitled is a right secured by the laws of the United States, including, but not limited to, the Medicaid Act, 42 U.S.C. §§ 1396, et seq.

135.   Plaintiff's right to receive adequate notice of decisions to reduce or deny Medicaid services is a right protected by the Medicaid Act and the Fourteenth Amendment of the U.S. Constitution.

136.   In violation of 42 U.S.C. § 1983, Defendant has subjected Plaintiff to the deprivation of her rights protected by the Medicaid Act and U.S. Constitution under color of a statute, ordinance, regulation, custom, or usage of the state of Georgia.

### COUNT FIVE

137.   The allegations of the numbered paragraphs above are incorporated by reference.

138.   Pursuant to 42 U.S.C. § 1988, Plaintiff should recover reasonable attorneys' fees for taking action to enforce her federal statutory rights under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)   Issue preliminary and permanent injunctive relief enjoining Defendant from applying policies or criteria not based in medical necessity when reviewing requests for EPSDT services from Plaintiff;

(b)   Issue preliminary and permanent injunctive relief enjoining Defendant

from violating Plaintiff's rights secured by federal law and requiring Defendant to promptly provide all medically necessary private duty and case management services to which Plaintiff is entitled under the Medicaid Act;

(c)   Issue preliminary and permanent injunctive relief enjoining Defendant from failing to adequately inform Plaintiff of the availability of case management services under EPSDT and where and how to access those services;

(d)   Issue preliminary and permanent injunctive relief enjoining Defendant from discharging Plaintiff from the COMP Waiver due to the receipt of EPSDT services and from denying Plaintiff any services available under the COMP Waiver not otherwise covered by EPSDT;

(e)   Issue preliminary and permanent injunctive relief enjoining Defendant from violating Plaintiff's right to adequate notice and requiring Defendant to provide Plaintiff with future notices that comply with the Medicaid Act and the Fourteenth Amendment to the U.S. Constitution;

(f)   Declare that Defendant's actions, inactions and refusal to provide all medically necessary Medicaid services to Plaintiff to which she is

entitled violate the Medicaid Act;

(g)   Declare that Defendant's failure to adequately inform Plaintiff of the availability of case management services under EPSDT and where and how to access those services violate the Medicaid Act;

(h)   Declare that Defendant's failure to provide adequate notice of his decision regarding Medicaid services for Plaintiff violate the Medicaid Act and the Fourteenth Amendment of the U.S. Constitution;

(i)   Award Plaintiff her litigation expenses, including reasonable attorneys' fees; and

(j)   Award such other relief as may be just, equitable and appropriate.

Respectfully submitted, this 27th day of October, 2017.

s/ Joshua H. Norris
Georgia Bar No. 545854

Attorney for Plaintiff

Law Office of Joshua H. Norris, LLC
1801 Peachtree Street NE
Suite 125
Atlanta, Georgia 30309
Telephone:   (404)904-7581
Facsimile:   (404) 393-9680
E-mail:   josh.norris@childrenshealthlaw.org

39

## VERIFICATION

STATE OF GEORGIA      §
                               §

COUNTY OF FULTON      §

On this day, Ruth Kitt appeared before me, the undersigned notary public. After I administered an oath to her, upon her oath, she stated that she read the Verified Complaint for Injunctive and Declaratory Relief, that the allegations of which she has personal knowledge stated in the Verified Complaint are true and correct, and that allegations of which she does not have personal knowledge she believes them to be true based on specified information, documents, or both.

RUTH KITT

SWORN TO and SUBSCRIBED before me on October 27, 2017.

Notary Public in and for
the State of Georgia

FELECIA M JOHNSON
NOTARY
EXPIRES
GEORGIA
NOV. 22, 2020
PUBLIC
DEKALB COUNTY